UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL E. EDWARDS | No.  2:19-cv-2360-KJN |
| Plaintiff, | ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| v. | (ECF No. 13, 14) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act.[1] In her summary judgment motion, plaintiff contends the Administrative Law Judge ("ALJ") erred by discrediting the opinion of examining orthopedist, Dr. Dericks, without providing specific and legitimate reasons for doing so.  (ECF No. 13.)  The Commissioner filed a cross-motion for summary judgment, asserting that the ALJ provided specific and legitimate reasons for discounting Dr. Dericks's opinion, and contending the ALJ's decision was otherwise supported by substantial evidence.  (ECF No. 14.)

For the reasons set forth below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion, and AFFIRMS the final decision of the

---

[1] The parties consented to the Magistrate Judge's jurisdiction for all purposes, and matter was assigned to the undersigned by court order and Local Rule 302(c)(15).  (ECF Nos. 8, 9, 15.)

1

1  Commissioner.

2  **I.      BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS**[2]

Plaintiff stopped working on June 14, 2015, when she ended her nearly twenty-six year career as a cake decorator at a grocery store bakery. (Administrative Transcript ("AT") 311.) On April 21, 2016, plaintiff applied for Title II disability, contending she was disabled due to, among other things, carpal tunnel, de Quervain's tenosynovitis, trigger finger, ganglion cysts, and synovitis. (AT 309, 317, 319.) Plaintiff's application was denied initially and again upon reconsideration. (AT 143-44, 157, 159.) Plaintiff, aided by a non-attorney representative, sought review of the denials with an ALJ. (AT 162, 177.) At a July 6, 2018 hearing, plaintiff testified as to her conditions. (AT 81.) The ALJ also heard testimony from a vocational expert ("VE"), as well as Dr. Arthur Lorber, a medical expert. (AT 78, 91, 386.)

On September 26, 2018, the ALJ issued a decision determining plaintiff was not disabled for the relevant period. (AT 18-31.) At step one, the ALJ concluded plaintiff had not engaged in substantial gainful activity since June 14, 2015. (AT 20.) At step two, the ALJ found plaintiff had the following severe impairments: status post bilateral de Quervain's tenosynovitis and carpal tunnel syndrome, degenerative disc disease of the hip and of the lumbar spine with mild

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(a). A parallel five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

**Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
**Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
**Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
**Step four**: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
**Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

scoliosis, and colitis.  (Id.)  At step three, the ALJ determined plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1").  (AT 22.)

The ALJ found plaintiff had the residual functional capacity ("RFC") to perform light work,[3] except that she:

> could lift and carry 20 pounds occasionally and 10 pounds frequently[;] is able to reach in all directions[;] could frequently handle, grasp, and engage in fine manipulation (defined as 1/3 to 2/3 of the work day) but is not able to perform these functions continually (defined as higher than 2/3 of the day)[; and] should avoid all exposure to cold environments.

(AT 23.)  In reaching this conclusion, the ALJ stated she considered all symptom testimony, medical evidence, and opinion evidence.  (Id.)  Relevant here, the ALJ rejected the more restrictive findings from Dr. Dericks, expressed in a February 10, 2016 report following an orthopedic evaluation of plaintiff's wrists, hands and fingers.  (AT 27, 29, citing 444-57.)

At step four, the ALJ determined plaintiff was able to perform past relevant work as a cake decorator because the work did not require performance of activities precluded by plaintiff's RFC.  (AT 29.)  The ALJ alternatively found, at step five that in light of plaintiff's RFC, age, education, and work experience, and based on the VE's testimony, there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  (AT 30.)

Plaintiff appealed to the Appeals Council on November 16, 2018.[4]  (AT 269-73.)  On September 18, 2019, the Appeals Council denied plaintiff's request for review, and affirmed the ALJ's decision denying plaintiff's request for benefits.  (AT 3-8, 269-73.)  Plaintiff then filed this action within sixty days, requesting judicial review of the Commissioner's final decision; the

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities…" C.F.R. § 404.1567(b).

[4] Plaintiff filed additional medical records accompanying her request for review.  (AT 36-69.)

parties filed cross–motions for summary judgment.  (ECF Nos. 1, 13, 14.)

## II. STANDARD OF REVIEW

The court reviews the Commissioner's decision de novo, and should reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard."  Buck v. Berryhill, 869 F. 3d 1040, 1048 (9th Cir. 2017).  Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Edlund v. Massanari, 253 F. 3d 1152, 1156 (9th Cir. 2001).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Id.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F. 3d 1035, 1038 (9th Cir. 2008).

## III. ISSUE PRESENTED

Plaintiff contends the ALJ's decision, as detailed above, is not supported by substantial evidence.  Specifically, plaintiff argues the ALJ did not provide specific and legitimate reasons for according less weight to Dr. Dericks February 10, 2016 orthopedic evaluation report.

The Commissioner argues the ALJ sufficiently articulated her reasons for according less weight to Dr. Dericks's opinions.  The Commissioner notes the ALJ relied on Dr. Lorber's medical opinion and the medical evidence of record in discounting Dr. Dericks's opinion, which is all that is required under Ninth Circuit precedent.  As such, the Commissioner contends the decision should be affirmed.

## IV. DISCUSSION

Legal Standard for Weighing Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F. 3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F. 3d 821, 830 (9th Cir. 1995).  Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion.  Holohan, 246 F. 3d at 1202.  While a treating professional's opinion generally is accorded

4

superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). The regulations require the ALJ to weigh a contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected). The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. A contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Lester, 81 F. 3d at 830-31. An ALJ provides specific and legitimate reasons by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

Analysis

**1. The ALJ provided a sufficiently specific summary of the medical evidence.**

Here, the ALJ satisfied the first Magallanes requirement of "setting out a detailed and thorough summary of the facts and conflicting clinical findings" by summarizing plaintiff's symptom testimony, visits to various health professional, and notes taken by certain physicians. Magallanes, 881 F. 2d at 751. Generally, the ALJ cited to and discussed AT 460-732 [plaintiff's worker's compensation evaluations]; 733-65 [the office treatment records from Shasta Orthopedics]; 444-59 [the medical report from Dr. Dericks]; 410-11 [the hospital records from Apogee Outpatient Services]; 142, 156 [the two disability determinations from the state-agency reviewing physicians]; 78-83 and 97-117 [plaintiff's testimony at the hearing]; and 84-97 [Dr.

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527.

Lorber's hearing testimony and medical opinion].  (See, generally, AT 23-27.)

Relevant here, the ALJ noted plaintiff's 2012 and 2013 surgeries performed by Dr. Stephen Ferraro, wherein he "performed a left wrist open carpal tunnel release and a left wrist incision of the tendon sheath of the first dorsal compartment," and later a "a right vision open carpal tunnel release at the wrist and a right wrist incision of the tendon sheath of the first dorsal compartment."  (AT 24, citing AT 666-67 and 617-18.)  The ALJ noted plaintiff's 2015-16 treatment records, showing improvements with therapy and exercise, and the meeting of "all goals for the treatment period."  (Id., citing AT 461-62, 481-84.)  The ALJ also noted plaintiff's November 2015 examination with Dr. Ferraro, her February 2016 follow-up appointment with Shasta Orthopedics, and her June 2016 excision of a ganglion tendon sheath of her right wrist.  (AT 25, citing AT 461-62 and 410.)

Additionally, the ALJ discussed four medical opinions in the record.  First, the ALJ noted Dr. Dericks report after a February 2016 examination, wherein he opined that plaintiff was "temporarily totally disabled at this time." (AT 25, citing AT 444-57.)  Dr. Dericks based this conclusion on plaintiff's expressed symptoms, his diagnostic impressions, and his recommended treatment of "purified platelet injections."  (Id., citing AT 452, 456.)  The ALJ also noted Dr. Dericks's finding that plaintiff "has not yet reached maximum medical improvement or a permanent or stationary status, as improvement is anticipated with further medical treatment." (Id., citing AT 456.)

Second, the ALJ discussed the medical opinion of Dr. Lorber, who testified at the July 2018 hearing.  (AT 23.)  The ALJ noted Dr. Lorber's questions to plaintiff regarding "how functional she is with her hands," as well as his observations that plaintiff did not require the use of any splints, braces, or assistive devices for ambulation.  (Id., citing AT 78-84.)  The ALJ observed the breadth of Dr. Lorber's review of the record, noting the doctor's opinion that while plaintiff was referred for surgery due to decreased grip strength, plaintiff's records overall reflected "unremarkable" and "normal" findings. [6]  (Id., citing AT 86.)  The ALJ then recited Dr.

---

[6] Dr. Lorber also opined that Dr. Dericks's suggested purified platelet injection treatment was highly controversial and studies did not determine the treatment to be of any value.  (AT 88.)

6

Lorber's opinion that plaintiff could "lift 20 pounds occasionally and ten pounds frequently," could "reach in any direction without restriction," and could grasp and finger "frequently, but not continuously." (Id., citing AT 90-91.)

Third, the ALJ noted the opinions of the two state-agency physicians. (See AT 25.) Both of these non-examining physicians assigned plaintiff an RFC of light work due to her ability to occasionally finger and handle. (Id., citing AT 142, 156.) The ALJ noted each of these physicians determined plaintiff could not return to her past work as a cake decorator, but that there were other jobs in the national economy she could work, and thus was not disabled. (Id.)

The above represents a "detailed and thorough summary of the facts" and conflicting clinical findings as required in the Ninth Circuit. Magallanes, 881 F. 2d at 751.

**2. The ALJ's sufficiently interpreted the medical evidence and provided legitimate reasons for discounting Dr. Derick's more-restrictive findings.**

As noted above, the record reflects contradictory opinions between Dr. Dericks, Dr. Lorber, and the two state-agency reviewing physicians. (See AT 23, 25.) Both of the State agency examiners opined, in 2016, that plaintiff's conditions limited her to occasional fingering and handling. (AT 142, 156.) However, the ALJ found that there was no objective medical support for finding occasional handling and occasional fine finger manipulation. (AT 28, citing AT 142, 156.) Rather, the ALJ stated that the updated medical evidence demonstrated that State agency findings were only somewhat consistent with the bulk of the medical evidence record. (AT 29.) The ALJ gave great weight to Dr. Lorber's opinions, as he assessed the claimant had light work ability and could finger and grasp frequently, but not continuously. (AT 29.) The ALJ noted that Dr. Lorber based his opinions on a detailed longitudinal review of the treatment records and plaintiff's testimony. (Id.) By contrast, Dr. Dericks opined that plaintiff was

---

Further, Dr. Lorber stated that Dr. Ferraro recommended treatment with platelet injections, but the platelet injections request was rejected by the Worker's Compensation carrier due to it being such a controversial treatment. (AT 88.) Additionally, Dr. Lorber noted that carpal tunnel surgery and de Quervain's surgery typically do not render a patient with a weaker or declined grip strength. (AT 94.) Dr. Lorber stated that the disease process for carpal tunnel and de Quervain's should be absent once surgery is performed. (AT 95.) The Commissioner cites to this evidence, but the ALJ did not specifically cite to it.

1  temporarily totally disabled, but also stated that plaintiff had not reached maximum medical
2  improvement or a permanent or stationary status, as improvement was anticipated.  (AT 456.)
3  The ALJ assigned little weight to Dr. Dericks's opinion, however, as she not only found Dr.
4  Lorber's assessment to be more consistent with the entire record, but also found "medical
5  improvement occurred following successful surgery."  (AT 29.)  On its face, this conflict of
6  medical opinions is one squarely within the ALJ's purview, and that there is more than one
7  rational interpretation of the evidence cannot be a basis for the court to reverse.  Edlund, 253 F.3d
8  at 1156; Tommasetti, 533 F.3d at 1038.

9  However, the court does recognize that the ALJ essentially took the recommendation of a
10 non-examining physician over that of one of plaintiff's examining physicians.  This would
11 present a problem if the ALJ had only relied on Dr. Lorber's opinion in her crafting of the RFC.
12 See Lester, 81 F.3d at 831 ("The opinion of a non-examining physician cannot by itself constitute
13 substantial evidence that justifies the rejection of the opinion of either an examining physician or
14 a treating physician.").  Apparently seizing on this, plaintiff argues the ALJ failed to provide
15 anything more than conclusory assertions that Dr. Lorber's opinion was more consistent with
16 plaintiff's medical records than was Dr. Dericks's "temporarily totally disabled" opinion.  (See
17 AT 29.)  Plaintiff also argues the ALJ falsely stated that the updated evidence displayed medical
18 improvement following successful surgery and the ALJ failed to point to any evidence supporting
19 this assertion.  (ECF No. 13 at 10.)

20 It is true the ALJ did not cite to any evidence in the paragraph where she assigned little
21 weight to Dr. Dericks examining opinion.  (See AT 30.)  However, the ALJ's decision read as a
22 whole provides specific and legitimate reasons rationally showing medical improvement.  As
23 noted above, the ALJ had just completed a thorough review not only of the physician's opinions
24 in the record, but also of plaintiff's medical records.  Then, in the section at AT 28, the ALJ
25 discussed Dr. Derick's examination alongside plaintiff's medical records, noting improvement
26 after surgery and therapy.  (AT 27, citing AT 460-732.)  Dr. Lorber's opinion that fingering and
27 grasping could be done frequently is supported by other evidence in the record showing medical
28 improvement following plaintiff's surgery.  (See AT 487, 498, 500, 504, 506, 510, 512.)  Given

this discussion, the ALJ permissibly assigned less weight to Dr. Derick and more to Dr. Lorber. Thomas, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."); see also Salas v. Colvin, 2014 WL 4186555, at *4-5 (E.D. Cal. Aug. 21, 2014) (upholding ALJ's finding assigning less weight to a treating doctor's medical opinion, when the record reflected medical improvement and the doctor noted that the problems were treatable and improvement could occur). Admittedly, the ALJ could have provided more citations to the record directly after her conclusions at AT 30 regarding Dr. Dericks and Dr. Lorber. However, the ALJ sufficiently cited to the evidence in support of her discounting of Dr. Lorber, such that Magallanes is satisfied.

Further, the court does note plaintiff's citation to portions of the record where plaintiff "relayed a 'worsening' of her symptoms with little or no change after surgery." (ECF No. 13 at 10, citing, e.g., AT 489, 735, 773.) While true plaintiff expressed a worsening during her medical checkups, and the physicians transcribed those expressions, an ALJ is not required to accept them and the ALJ properly rejects plaintiff's subjective-symptom testimony. See, e.g., Buck v. Berryhill, 869 F. 3d 1040, 1048 (9th Cir. 2017) (finding that an ALJ may disregard a physician's opinion of disability where "premised to a large extent upon the claimant's own accounts of his symptoms and limitations," so long as "those complaints have been properly discounted."). Here, the ALJ found plaintiff's subjective symptom testimony regarding "the intensity, persistence, and limiting effects" of her symptoms to be inconsistent with the medical and other evidence (AT 26), and so was allowed to disregard those expressions as transcribed in the medical records.[7]

Conclusion

In sum, the ALJ properly resolved all conflicts present in the record. The ALJ provided specific and legitimate reasons for assigning reduced weight to Dr. Derick's opinion by (1) thoroughly summarizing the medical evidence; and (2) explaining her interpretation of that

---

[7] Plaintiff does not challenge the ALJ's findings on plaintiff's subjective complaints. However, the court addresses the issue here, because the ALJ noted that plaintiff's complaints were inconsistent with the medical record, in that the objective records reflected medical improvement.

evidence.  Magallanes, 881 F. 2d at 751; see also Lester, 81 F. 3d at 830-31.  It is reasonable to conclude that Dr. Dericks opinion of "temporarily totally disabled" was inadequately supported by clinical findings based on the recent improvements and on Dr. Lorber's opinion.  See, generally, Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992) (stating that inconsistences and ambiguities represent specific and legitimate reasons for rejecting the opinion).  This resolution, alongside the ALJ's resolution of the inconsistencies in plaintiff's subjective-symptom testimony, falls within the ALJ's authority—which was properly exercised.  Edlund, 253 F.3d at 1156.

## ORDER

The court finds that the ALJ's decision was free from prejudicial legal error and supported by substantial evidence in the record as a whole.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) is DENIED;
2. The Commissioner's cross-motion for summary judgment (ECF No. 14) is GRANTED;
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner; and
4. The Clerk of Court shall close this case.

Dated:  September 30, 2020

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

edwa.2360